UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>POSIBA, INC., a Delaware corporation,<br><br>Debtor. | Case No.: 19-CV-1529 JLS (MDD)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE, (2) STRIKING IMPROPER MATERIALS FROM RECORD, (3) GRANTING MOTION TO DISMISS APPEAL, AND (4) DISMISSING AS MOOT APPEAL**<br><br>(ECF Nos. 1, 8, 15-1) |

Presently before the Court is the Motion by Certain Underwriters at Lloyd's, London (the "Underwriters"), to Dismiss Appeal by Kuity Corporation ("MTD," ECF No. 8), in which Appellee Leslie Gladstone joins, *see* ECF No. 11, as well as Appellant Kuity Corporation's Response in Opposition to ("Opp'n," ECF No. 13) and the Underwriters' Reply in Support of ("Reply," ECF No. 15) the Motion. Also before the Court is the Underwriters' Objections to Evidence Filed in Support of Kuity Corporation's Opposition to Motion to Dismiss Appeal; Motion to Strike ("MTS," ECF No. 15-1). The Court took the Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF Nos. 10, 16. Having carefully considered the underlying record, the Parties' arguments, and the relevant law, the Court (1) **GRANTS IN PART AND DENIES IN**

**PART** Underwriters' Motion to Strike (ECF No. 15-1), (2) **STRIKES** from the record those material not properly before the Court, (3) **GRANTS** Underwriters' Motion to Dismiss (ECF No. 8), and (4) **DISMISSES AS MOOT** Kuity's appeal (ECF No. 1).

## BACKGROUND

Debtor Posiba, Inc. ("Posiba"), was an angel/venture investor-backed data and analytics powered software as a service information service provider for foundations, governments, nonprofits, and donors. Opp'n at 3. Posiba filed a voluntary petition under Chapter 11 of the Bankruptcy Code on December 22, 2016. MTD at 1; Opp'n at 3. After filing its Chapter 11 petition, Posiba purchased a cyber insurance policy under CFC Underwriting, Ltd. Tech (Insurance for Technology Companies) Package Policy No. ESF00233252 (1/13/17–1/13/18) (the "Policy"), which was to insure Posiba against losses arising from cyber events, Opp'n at 3, with a limit of $1.05 million. *Id.* at 3 n.3, 4. Underwriters are the insurers severally subscribing to the Policy. *Id.* at 3, 6.

On January 24, 2017, Posiba's system and backups were deleted in a cyber-attack. *Id.* at 3. Posiba received approximately $75,000 on claims submitted under the Policy over the next several months. *See* ECF No. 6 ("Tr.") at 10:23–11:6, 12:5–6. The bankruptcy court then converted Posiba's Chapter 11 case to one under Chapter 7 and appointed Appellee as the Chapter 7 Trustee on August 25, 2017. MTD at 2; Opp'n at 4–5. The Trustee recovered an additional $198,000 under the Policy after her appointment, bringing Posiba's total recovery under the Policy to approximately $275,000. Tr. at 11:25–12:7. The process, however, was not easy: the Trustee testified that the insurance company "engaged in extreme delay and non-response tactics," *id.* at 12:8–10, and was "very obstreperous." *Id.* at 12:11–17.

On June 5, 2019, the Trustee filed and served a motion to approve the sale of the Policy, which was the sole remaining asset of the estate, with a hearing noticed for July 3, 2019. MTD at 2; Opp'n at 5. The motion sought approval to sell all rights and claims under the Policy to Kuity for $22,000, subject to overbids. MTD at 2; Opp'n at 5. Kuity and its managers, Elizabeth Dreicer and Erin McNamara, are former management of

1  Posiba. MTD at 2; Opp'n at 5. The Trustee represented to the Court that the proposed
2  purchased price was fair, reasonable, and negotiated at arm's length and that the sale was
3  in the best interest of the estate. MTD at 2. The motion also requested that the bankruptcy
4  court find the purchaser, including any overbidder, be afforded the rights of a good faith
5  purchaser under 11 U.S.C. § 363(m). MTD at 2.

6  On June 6, 2019, the Trustee sent a copy of the motion to Underwriters' counsel and
7  notified them of the details of the overbid process, including the need to prequalify, which
8  Underwriters timely did. *Id.* at 2; Opp'n at 6. Although any opposition to the motion was
9  to be filed on June 19, 2019, *see* MTD at 3 n.2, Kuity file an objection to Underwriters'
10 participation in the overbid process on July 1, 2019. *Id.* at 3; Opp'n at 6. No other
11 objections were filed. *See* Tr. at 36:23–37:2.

12 The bankruptcy judge heard oral argument on the motion on July 3, 2019, including
13 testimony from the Trustee, and then supervised the auction of the Policy. MTD at 3;
14 Opp'n at 6. As far as the testimony elicited, the Trustee testified under oath in response to
15 questions from the bankruptcy judge that "[her] business judgment [wa]s that the sale
16 should go forward in the manner . . . that [she] ha[d] proposed." Tr. at 7:8–11. The length
17 of time and acrimony surrounding attempts to recover under the Policy "led to [the
18 Trustee's] conclusion that when [she] was approached for the sale of the litigation that that
19 was in the best interests of creditors and to get this case wrapped up." *Id.* at 8:1–15. "In a
20 nutshell, the paramount interests of creditors [she] th[ought] weigh[ed] heavily in favor of
21 selling the remaining interests." *Id.* at 9:8–10. On cross-examination by Kuity's counsel,
22 the Trustee confirmed her belief that "the insurance company engaged in extreme delay
23 and non-response tactics." *Id.* at 12:8–10. Although Kuity offered to pay ten percent of
24 its recovery from any litigation under the Policy before the hearing, the Trustee "d[id]n't
25 think that . . . [wa]s an enhancement," *id.* at 16:23–17:2, preferring the higher bid offered
26 by Underwriters "[g]iven the time delays involved . . . and the uncertainty of the litigation."
27 *Id.* at 18:13–18. The Trustee was then asked additional questions by the bankruptcy judge,
28 confirming that there was no fraud or collusion in the negotiation process for the sale. *Id.*

3

19-CV-1529 JLS (MDD)

at 19:10–20:2. Kuity also offered the testimony of an insurance attorney, Craig Miller, who testified that, "from [his] perspective, when [he] see[s], Your Honor, $27,000 buyout of a claim that could exceed far, by far that amount, [he] see[s] an insurance company taking advantage of its wrongful conduct." *Id.* at 24:2–5.

The bankruptcy judge then proceeded to offer her tentative ruling, noting that this was a "very unusual situation" and that, "at the end of the day, that's why we have bidding, is so that the highest and best value for these claims can be obtained by two parties who have obviously very different points of view on their value." *See id.* at 25:13–26:21. The bankruptcy judge expressed her view that the parties' difference of opinion and self-interest did not "mean there's fraud and . . . collusion simply because their actions with regard to the litigation itself are debatable." *See id.* at 28:24–29:4. The bankruptcy judge added that, "[a]t the end of the day, the Trustee is obligated . . . to close the estate as soon as possible . . . , and the Trustee's obligation to expeditiously close the case is something that she mentioned in her testimony." *Id.* at 29:5–13. The judge concluded that she was "making a good faith finding." *Id.* at 30:3.

The Trustee asked the bankruptcy judge to confirm "an all cash-sale," *id.* at 34:13–18, and the bankruptcy judge "found that that [wa]s consistent with the proper exercise of [the Trustee's] business judgment." *Id.* at 34:19–23. The bankruptcy judge clarified that the bidding would proceed on an all-cash basis, with Kuity being allowed to renew its offer for some percentage of the potential litigation recovery after a cash amount had been established. *See id.* at 35:24–36:4. The court then allowed the Trustee to conduct the auction. *Id.* at 34:25–35:4. The bidding started at $22,000, *see id.* at 37:3–5, with Kuity's final bid being $51,000, *id.* at 40:7–10, and Underwriters' final bid being $60,000. *Id.* at 40:10–16. Kuity then offered $51,000 with ten percent of any net recovery. *Id.* at 40:22–23. After the Trustee indicated her preference to Underwriters' $60,000 cash offer, *see id.* at 41:3–10, Kuity increased its offer to $59,000 with twenty percent of any net recovery. *See id.* at 41:15–16. Because the Trustee, "in [her] business judgment, . . . fe[lt] it [wa]s imperative that the estate accept a cash-only bid for this asset," *id.* at 41:19–24,

Kuity offered to match Underwriters' $60,000 bid "plus the percentage of net recovery." *Id.* at 42:4–5. The Trustee expressed her opinion that there was no "procedure for that in the bidding process" and that "the estate needs to not be involved in litigation that is being led by Kuity and/or Ms. Dreicer," *id.* at 42:6–10, and then reiterated her request for a cash-only bid. *Id.* at 42:12–13. The bankruptcy judge then asked whether there was a bid for $61,000. *Id.* at 42:14–15. With no additional bids made, the bankruptcy judge approved Underwriters' $60,000 all-cash bid as the winning bid and Kuity's $51,000 cash bid as the backup. *See id* at 42:16–44:1.

On July 30, 2019, the bankruptcy court entered the sale order approving the Trustee's motion. MTD at 4; Opp'n at 6–7. The Trustee received the sale funds from Underwriters' counsel on August 2, 2019, thereby consummating the sale. MTD at 4.

On August 14, 2019, Kuity filed a Notice of Appeal. MTD at 4; *see also* ECF No. 1. Kuity neither sought nor obtained a stay of the sale pending appeal. *See* MTD at 4. Kuity filed its Statement of Issues and Designation of Record on Appeal on August 28, 2019. MTD at 4; *see also* ECF No. 4-2. Specifically, Kuity raised the following issues on appeal:

> 1. . . . Did the Bankruptcy Court abuse its discretion in approving a sale to Insurer, which acted in bad faith with respect to the very claims the Bankruptcy Court allowed it to purchase, where Appellant bid the same cash amount plus 20% of the net recovery on valuable claims against Insurer?
>
> 2. . . . [Whether] procedural irregularities, which resulted in an inferior bid from a bad faith actor being approved as the winning bid, constitute[d] reversible error?
>
> 3. . . . Did the Bankruptcy Court's application of an erroneous legal standard regarding the Trustee's duty, which resulted in depriving the estate of 20% of net recovery on a highly valuable claim that would have been pursued without cost or expense to the estate, constitute reversible error?

ECF No. 4-2 at 1–3. Underwriters' Motion to Dismiss followed on February 10, 2020.

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's legal conclusions de novo and its factual findings for clear error. *In re Mortgs. Ltd.*, 771 F.3d 1211, 1214 (9th Cir. 2014). Mootness is a jurisdictional issue that the district court reviews de novo. *See In re Baker & Drake*, 35 F.3d 1348, 1351 (9th Cir. 1994). "A bankruptcy court's finding of good faith is primarily a factual determination which is reviewed for clear error." *In re X-Treme Bullets, Inc.*, No. 3:19-cv-00637-MDD, 2020 WL 4455582, at *6 (D. Nev. Aug. 3, 2020) (citing *In re Taneja*, 743 F.3d 423, 429 (4th Cir. 2014); *Meeks v. Red River Entm't (In re Armstrong)*, 285 F.3d 1092, 1096 (8th Cir. 2002)).

## DISCUSSION

Underwriters move to dismiss Kuity's appeal as moot pursuant to 11 U.S.C. § 363(m) and Federal Rule of Civil Procedure 12(b)(1), *see* MTD at 1, and to strike the Declaration of Elizabeth Dreicer in Support of Opposition ("Dreicer Decl.," ECF No. 13-1) and Exhibits A through D thereto (ECF Nos. 13-2–5), as well as those portions of the Opposition citing to those materials. *See* MTS at 1.

### I. Motion to Strike

As an initial matter, Underwriters seek to strike the Dreicer Declaration and Exhibits A through D thereto, as well as those portions of the Opposition relying on those materials, on the grounds that those materials were "not designated as part of the record on appeal, and were never before the bankruptcy Court in proceedings below." MTS at 1.

The Court agrees that it is improper to consider the Dreicer Declaration and Exhibits A through C thereto,[1] *see, e.g.*, *Miles v. Ryan*, 691 F.3d 1127, 1142 (9th Cir. 2012), and that they are properly stricken from the record. *See, e.g.*, *Kirshner v. Uniden Corp. of Am.*, 842 F.2d 1074, 1077–78 (9th Cir. 1988) (striking from appellate record items "neither filed

---

[1] Indeed, Kuity appears to concede as much, noting in is Opposition that "there is a remarkable body of evidence of Insurers' bad faith here—some of which is detailed in the Declaration of Elizabeth Dreicer . . . —although this Court need only look to the independent Trustee's own summary testimony." Opp'n at 2.

with the district court, considered by the court, nor even before the court when it entered the order that [the appellant] now challenges on appeal"). Because Exhibit D to the Dreicer Declaration is a filing from the underlying bankruptcy action, *see* Dreicer Decl. Ex. D, ECF No. 13-5, that exhibit may properly be considered on appeal (to the extent relevant) through judicial notice. *See In re Khan*, No. CV 18-809 JGB, 2019 WL 8012380, at *3 (C.D. Cal. July 9, 2015) ("A court considering a bankruptcy appeal may take judicial notice of the underlying bankruptcy records.") (citing *O'Rourke v. Seabd. Surety Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957–58 (9th Cir. 1989)). As for Kuity's Opposition, the Court concludes that Underwriters' designations of materials to be stricken are overbroad, as certain of the material Underwriters seek to strike can be found in the transcript of the July 3, 2019 hearing or other documents already in the record.

The Court therefore **GRANTS IN PART AND DENIES IN PART** Underwriters' Motion to Strike and **STRIKES** the Dreicer Declaration; Exhibits A through C to the Dreicer Declaration; and the following portions of Kuity's Opposition:  page 3, line 15 through page 4, line 18, including footnote 5; page 5, lines 7 through 9 and 16 through 17; and page 8, lines 1 through 8, including footnote 11.

## II. Motion to Dismiss

The Underwriters contend that this appeal is statutorily moot under Section 363(m),[2] *see* MTD at 4–10, pursuant to which, "[w]hen a sale of assets is made to a good faith purchaser, it may not be modified or set aside unless the sale was stayed pending appeal." *Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570, 576 (9th Cir. 1998) (citing 11 U.S.C. § 363(m); *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d 1170, 1172 (9th Cir. 1988)). According to Underwriters, "because Kuity failed to seek and obtain an order staying the sale of the . . .

---

[2] Section 363(m) provides, in relevant part, that "[t]he reversal or modification on appeal of an authorization under subsection (b) . . . of this section of a sale or lease of a property does not affect the validity of a sale or lease under such authorization to any entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." 11 U.S.C. § 363(m).

Policy pending appeal, by statute this appeal is moot," and, "[a]s a result, this Court does not have jurisdiction to hear the appeal." MTD at 4 (citing 11 U.S.C. § 363(m); *IRS v. Pattullo (In re Pattullo)*, 271 F.3d 898, 900 (9th Cir. 2001)).[3]

Kuity opposes dismissal on the grounds that "[t]he mootness rule of section 363(m) applies only when a purchaser bought an asset in good faith," Opp'n at 8 (citing *In re Onouli-Kona Land Co.*, 846 F.2d at 1173), but that "the bankruptcy court never made an express and clear finding that Underwriters are a good-faith purchaser within the meaning of § 363(m)." *Id.* at 9. Further, "the record is devoid of a factual basis for the finding of good faith." *Id.* at 8–9 (citing *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 794 (9th Cir. 2005)).

It is undisputed that the sale was conducted pursuant to Section 363(b), *see* Underwriters' Request for Judicial Notice in Support of Motion ("RJN," ECF No. 8-2[4]) Ex. B, ECF No. 8-4, at 7,[5] and that Kuity did not seek a stay of the sale pending appeal; Underwriters' Motion therefore boils down to whether the bankruptcy court found that Underwriters purchased the Policy in good faith. Because the Court concludes that the bankruptcy court did make such a good faith finding, Section 363(m) renders Kuity's appeal moot and deprives the Court of jurisdiction.

/ / /

---

[3] Underwriters also urge that Kuity has waived any challenge to the bankruptcy court's good faith finding because Kuity neither addressed the issue at the hearing nor raised the issue in its Statement of Issues on appeal. *See* MTD at 8 (citing *Mano-Y&M, Ltd. v. Field (In re Mortg. Store)*, 773 F.3d 990, 998 (9th Cir. 2014); *Marshack v. Orange Comm. Credit (In re Nat'l Lumber & Supply)*, 184 B.R. 74, 76 (9th Cir. B.A.P. 1995)). The Court agrees—any substantive challenge to the bankruptcy court's good faith determination has been waived. In any event, the bankruptcy court's good faith determination was logical and supported by the record, including the Trustee's testimony concerning the negotiations with Kuity and Underwriters leading up to the sale.

[4] Because all of the exhibits appended to Underwriters' Request for Judicial Notice are records from the underlying bankruptcy proceeding, the Court **GRANTS** the Request. *See supra* Section I (citing *In re Khan*, 2019 WL 8012380, at *3).

[5] Citations to the exhibits to Underwriters' Request for Judicial Notice refer to this Court's CM/ECF pagination.

Although there is no explicit finding of good faith in the order approving the sale, *see* RJN Ex. G, ECF No. 8-9, at 3–4; *see also* Opp'n at 10 ("The [bankruptcy c]ourt never made an affirmative finding of good faith under section 363(m) in the Sale Order."), the Court concludes that the bankruptcy court entered that finding on the record at the hearing on the motion. *See* Tr. at 30:3 ("I'm making a good faith finding."). Kuity contends that, "[a]t best, the bankruptcy court . . . ma[de] a good faith finding as to Kuity" at the hearing, *see* Opp'n at 12, but this misconstrues the court's finding by neglecting the totality of the proceedings. *See generally* Tr. at 7:2–34:10.

The bankruptcy court began with an examination of the Trustee concerning the factors articulated in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986) (the "*A & C* factors"), used to determine the fairness, reasonableness, and adequacy of the proposed sale,[6] Tr. at 7:3–9:10, on which the Trustee was cross-examined by Kuity's counsel. *See id.* at 9:17–18:23. The bankruptcy judge then examined the Trustee concerning Kuity's and Underwriters' good faith. *See* Tr. at 19:6–20:2. The Ninth Circuit has instructed that "[a]bsence of good faith is 'typically shown by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Adeli v. Barclay (In re Berkeley Del. Ct., LLC)*, 834 F.3d 1036, 1041 (9th Cir. 2016) (affirming bankruptcy court's finding that purchaser had acted in good faith where "the agreement 'was the product of an arms-length negotiation between the Trustee and [the purchaser] and entered into by the parties without collusion and in good faith'") (quoting *In re Filtercorp, Inc.*, 163 F.3d at 577). Here, the bankruptcy court explicitly questioned the Trustee concerning her negotiations with both Kuity and Underwriters and

---

[6] "In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: [¶] (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *In re A & C Props.*, 784 F.2d at 1381 (quoting *Lambert v. Flight Trans. Corp. (In re Flight Trans. Corp. Secs. Litig.)*, 730 F.2d 1128, 1135 (8th Cir. 1984), *cert. denied*, 469 U.S. 1207 (1985)) (citing *Am. Can Co. v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 605, 607 (5th Cir. 1980)).

the absence of any fraud or collusion in the negotiations. *See* Tr. at 19:7–13. The bankruptcy court then clarified that, given Kuity's and Underwriters' contentions about bad faith concerning the underlying insurance dispute, that the absence of fraud or collusion was "in the context of this sale alone." *See id.* at 19:14–20:2. This is because "[l]ack of good faith . . . is determined by fraudulent conduct during the sale proceedings." *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985) (citing *Sulmeyer v. Karbach Enters. (In re Exennium, Inc.)*, 715 F.2d 1401, 1404–05 (9th Ci. 1983)).

After Mr. Miller offered his expert testimony on the *A & C* factors, *see* Tr. at 21:2–25:3, the bankruptcy court offered her tentative ruling. *See id.* at 25:13–29:18. When Kuity's counsel attempted to interrupt, *see id.* at 27:17, the bankruptcy judge indicated that he could renew his questions after she was done speaking. *See id.* at 27:18–21; *see also id.* at 29:19–20. As relevant to these proceedings, the bankruptcy judge explained:

> But at the end of the day, not only do I think that the bidding should proceed, because it -- the market will determine the value. But I do believe that in the narrow context we have that both parties, obviously, they're protecting their own interests. Kuity does not want to pay any more than it has to. And, frankly, neither does the insurance company.
>
> *But that doesn't mean there's fraud and conclusion -- or collusion* simply because their actions with regard to the litigation itself are debatable and can be resolved by way of further litigation or not based on whoever is willing to pay the estate the most money here.

*Id.* at 28:17–29:4 (emphasis added). After the judge finished delivering her tentative, Kuity's counsel attempted to "clear up . . . some misconceptions . . . and then move into some of the other points that the Court made." *See id.* at 29:21–30:2. In the midst of disputing that Kuity was an insider attempting to take advantage of Posiba, *see id.* at 29:24–30:2, the court interrupted that she was "making a good faith finding." *Id.* at 30:3. After additional argument from Kuity's counsel, *see id.* at 30:10–34:6, the bankruptcy court ///

ruled that she was not persuaded to change her mind and that the bidding would begin. *See id.* at 34:9–10.

In short, the bankruptcy court elicited testimony from the Trustee concerning the good faith of both Kuity and Underwriters. *See id.* at 19:6–20:2. She then tentatively concluded that, despite any bad faith in the underlying insurance dispute, there were none of the hallmarks of a lack of good faith in the auction sale of itself. *See id.* at 28:24–29:4. She then made an explicit finding of good faith. *See id.* at 30:3. It is therefore clear that the bankruptcy court concluded at the hearing that Underwriters' purchase of the Policy was in good faith. The absence of this finding from the order is inconsequential in light of the explicit finding on the record. *See, e.g.*, *In re Thomas*, 716 Fed. App'x 647, 649 (9th Cir. 2018) (mem.) ("[The reviewing court] construe[s] a judgment so as to give effect to the stated intention of the issuing court.") (citing *United States v. 60.22 Acres of Land*, 638 F.2d 1176, 1178 (9th Cir. 1980)); *see also Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1359 (9th Cir. 1998) ("[W]here the judgment is ambiguous or fails to express the rulings with clarity, the entire record before the issuing court and the findings of fact may be referenced in determining what was decided.") (quoting *United States v. Angle*, 760 F. Supp. 1366, 1371–72 n.4 (E.D. Cal. 1991), *rev'd on other grounds*, 7.F.3d 891 (9th Cir. 1993)) (alteration in original).

The Court therefore concludes that the bankruptcy court made the requisite finding of good faith pursuant to Section 363(m). Because Kuity failed to obtain a stay of the sale of the Policy pending appeal, this appeal is statutorily moot under Section 363(m). *See, e.g.*, *In re Berkeley Del. Ct.*, 834 F.3d at 1041.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Underwriters' Motion to Strike (ECF No. 15-1) and **STRIKES** the Dreicer Declaration and Exhibits A through C thereto, as well as those portions of Kuity's Opposition enumerated herein. *See supra* page 7. Because the Court concludes that the bankruptcy court found that Underwriters was a good faith purchaser pursuant to 11 U.S.C. § 363(m)

and because Kuity failed to obtain a stay of the underlying sale pending appeal, the Court **GRANTS** the Underwriters' Motion to Dismiss (ECF No. 8) and **DISMISSES AS MOOT** Kuity's appeal pursuant to 11 U.S.C. § 363(m).  Accordingly, the Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  September 24, 2020

Hon. Janis L. Sammartino
United States District Judge